FILED                                    FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Jacksonville Division

CIVIL RIGHTS COMPLAINT FORM

Keith Richard Carpenter

Doc# 167350

(Enter full name of each Plaintiff and prison
number, if applicable)

v.

SGT. James Davis, C/o Derek Gilstein,

C/o David Weathers, C/o Jared Crawford,

C/o Keith Parrish, C/o John Carter, C/o J. Crow

C/o Leonard Myers, C/o J. Gray, LT. Bennett

(Enter full name of each Defendant. If
additional space is required, use the blank
area directly to the right).

CASE NUMBER: 3:09-cv-1241-J-20HTS
(To be supplied by Clerk's Office)

Kilgore, SGT. Michael Wiggs, LPN Alicia Forsyth
Dr. C. Nguyen m.d., Dr. Julian Aviles C.H.O.,
Cathy Allin SR.HSA, Charlotte Bowlan SR. HSA,
Susan T. Robinson assist. warden, Milton Hicks
Warden, Dr. B. Kirkpatrick Audiologist, Dr. Frank
Johanson assist. Secretary Health Services,
Dr. Scott Thayer RMED, Pilar roxruy IISC, Celeste
Kemp Secretary Rep. C. Greene Secretary Rep. C. Neel
Secretary Rep. S. Milliken secretary Rep. M. Salano
Responding employee, Walter A. McNeil Secretary
of D.O.C. + Warne, Hi Priest Classification officer

[All Defendants in their individual
Capacities] [That all Defendants are
sued in their official capacities Also]

## ANSWER ALL OF THE FOLLOWING QUESTIONS:

I.    PLACE OF PRESENT CONFINEMENT: Florida State Prison
      (Indicate the name and location)

      7819 NW 228th Street. Raiford. FL 32026

II.   DOES YOUR COMPLAINT CONCERN EVENTS IN A STATE PRISON FACILITY WITHIN
      THE FLORIDA DEPARTMENT OF CORRECTIONS? Yes (X) No ( )

      [If your answer is YES, after reviewing the exhaustion requirements, answer the following
      questions]

EXHAUSTION OF ADMINISTRATIVE REMEDIES: Pursuant to the Prison Litigation Reform Act or 1995, Title VIII, Section 803°Amendments to Civil Rights of Institutionalized Persons Act, exhaustion of administrative remedies is required in any action brought with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility. Any required grievances, appeals, and responses must be submitted to the Court to verify exhaustion. (If your Complaint concerns conditions at state prison facilities, you must answer the following questions in Section II of this form. If the Complaint concerns conditions at a county jail or local correctional facility, you must complete Section III of this form.)

EXHAUSTION STEPS ORDINARILY REQUIRED FOR COMPLAINTS ABOUT CONDITIONS AT STATE PRISON FACILITIES:

General Grievance

    1.  Informal Grievance (Form DC3-005)
    2.  Formal Grievance (Form DC1-303)
    3.  Appeal to the Office of Secretary (Form DC1-303)

Other Grievance

Inmates are not required to utilize the informal Grievance process in the case of an emergency grievance, a grievance of reprisal, a grievance of a sensitive nature, a grievance alleging violation of the Americans with Disabilities Act, a medical grievance, a grievance involving admissible reading material, a grievance involving gain time governed by rule 33-11.0065 Incentive Gain Time, or a grievance involving disciplinary action (does not include corrective consultations) governed by chapter 33-22. The grievance steps are set forth in Fla. Admin. Code Chapter 33-29.

Questions:

A.    Emergency Grievance, Grievance of Reprisal, or Grievance of a Sensitive Nature, Grievance Alleging Violation of the American with Disabilities Act, Medical Grievance, Grievance, Grievance Involving Admissible Reading Material, Grievance Involving Gain Time Governed by Rule 33-11.0065 Incentive Gain Time, or Grievance Involving Disciplinary Action Governed by Chapter 33-22 (Request for Administrative Remedy or Appeal, bypassing the informal grievance step).

    1.  Did you submit an above-mentioned grievance to the Superintendent and/or to the office of Secretary (Form DC1-303)? Yes (X) No ( ) *See attached Exhibits: A1,B1,E1,F1,G1, H1,I1*

    2.  If so, you must attach a copy of the grievance and response to this Complaint form.

    3.  Were you denied emergency status? Yes ( ) No (X)

        a.  If so, did you go through the informal grievance, formal grievance and appeal process? Yes ( ) No ( )    *N/A*

        b.  If so, you must attach copies of the grievance/appeals and responses to this Complaint form.    *N/A*

B.    Informal Grievance (Request for Interview)

1. Did you submit an informal grievance (Form DC3-005)? Yes (X) No (/) Exhibit D1

2. If so, you must attach a copy of the grievance and response to this Complaint form. Exh D1 Attached

C. <u>Formal Grievance</u> (Request for Administrative Remedy or Appeal)

1. Did you have a disciplinary hearing concerning this matter? Yes ( ) No ( )

2. If so, you must attach a copy of the disciplinary report and disciplinary committee's findings and decision to this Complaint form.

3. Did you submit a formal grievance (Form DC1-303)? Yes (X) No ( ) Exhibits: A1, B1, C1, E1, F1, G1, H1, I1

4. If so, you must attach a copy of the grievance and response to this Complaint form.
   All Are attached

D. <u>Appeal to the Office of the Secretary</u> (Request for Administrative Remedy or Appeal)

1. Did you submit an appeal to the Office of the Secretary (Form DC1-303)?
   Yes (X) No ( )  See exhibits? A1, B1, E1, F1, G1, H1, I1

2. If so, you must attach a copy of the appeal and response to this Complaint form. All Attached

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING ANSWERS TO THE QUESTIONS IN THIS SECTION ARE TRUE AND CORRECT.

Signed this __15__ day of __December__, 2 _009_.


_____
Signature of Plaintiff

III.   **DOES YOUR COMPLAINT CONCERN EVENTS IN A COUNTY JAIL OR LOCAL FACILITY?** Yes ( ) No (☒)

If your answer is YES, answer the following questions.

A.   Is there a grievance procedure at your institution or jail? Yes ( ) No ( )  N/A

B.   Did you present the facts relating to your Complaint in the grievance procedure? Yes ( ) No ( )   N/A

C.   If your answer is YES:

1.   What steps did you take?   Not Applicable

_____

2.   What were the results?   Not Applicable

_____

3.   To demonstrate exhaustion, you must submit copies of all relevant grievances/appeals and responses.

D.   If your answer is NO, explain why not:   Not Applicable

_____

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING ANSWERS TO THE QUESTIONS IN THIS SECTION ARE TRUE AND CORRECT.

Signed this   15   day of   December   , 2 009   .

Signature of Plaintiff

IV.   PREVIOUS LAWSUITS:

A.   Have you initiated other lawsuits in state court dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof? Yes ( ) No (X)

B.   Have you initiated other lawsuits in federal court dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof? Yes ( ) No (X)

C.   If your answer to either A or B is YES, describe each lawsuit in the space provided below. If there is more than one lawsuit, describe all additional lawsuits on a separate piece of paper, using the same format as below.

   1.   Parties to previous lawsuit:

      Plaintiff(s): _____ Not Applicable _____

      Defendant(s): _____ Not Applicable _____

   2.   Court (if federal court, name the district; if state court, name the county):

      _____ Not Applicable _____

   3.   Docket Number: _____ Not Applicable _____

   4.   Name of judge: _____ Not Applicable _____

   5.   Briefly describe the facts and basis of the lawsuit: _Not Applicable_

   6.   Disposition (Was the case dismissed? Was it appealed? Is it still pending?):

      _____ Not Applicable _____

   7.   Approximate filing date: _____ Not Applicable _____

   8.   Approximate disposition date: _Not Applicable_

D.   Have you initiated lawsuits or appeals from lawsuits in federal court that have been dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted? If so, identify theses suits below by providing the case number, the style, and the disposition of each case:

_NOT Applicable_

V.   **PARTIES:** In part A of this section, indicate your <u>full name</u> in the first blank and your full mailing address in the second blank. Do the same for each additional Plaintiff named in the Complaint (if any) in part B of this section:

A.   Name of Plaintiff: _Keith Richard Carpenter_

Mailing address: _Florida State Prison_

_7819 NW 228th Street Raiford, FL 32026_

B.   Additional Plaintiffs: _NOT Applicable_

In part C of this section, indicate the **<u>full name</u>** of the first named Defendant. Also, fill in his or her mailing address, position, and where he or she is employed. For any additional Defendants, use parts D through G of this section for the names, addresses, positions and places of employment:

C.   Defendant: _James E. Davis_

Mailing Address: _7819 NW 228th Street_

_Raiford, FL 32026_

Position: _Correctional Officer's Sergeant_

Employed at: _Union Correctional Institution_

D.   Defendant: _Derek P. Gibstien_

Mailing Address: _7819 NW 228th Street_

_Raiford, FL 32026_

Position: _Correctional Officer_

Employed at: _Union Correctional Institution_

E.  Defendant: Michael Wiggs

Mailing Address: 7819 NW 228th Street

Raiford, FL 32026

Position: Correctional Officer Sergeant

Employed at: Union Correctional Institution

F.  Defendant: David Weathers

Mailing Address: 7819 NW 228th Street

Raiford, FL 32026

Position: Correctional Officer

Employed at: Union Correctional Institution

G.  Defendant: Keith Parrish

Mailing Address: 7819 NW 228th Street

Raiford, FL 32026

Position: Correctional Officer

Employed at: Union Correction Institution

H. Defendant: John Carter

Mailing Address: 7819 NW 228th Street

Raiford, FL 32026

Position: Correctional Officer

Employed at: Union Correctional Institution

(continued from page 7 Parties)

I. Defendant: Jared Cranford
   mailing Address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: Correctional Officer
   Employed at: Union Correctional Institution

J. Defendant: Leonard Myers
   mailing Address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: Correctional Officer
   Employed at: Union Correctional Institution

K. Defendant: J. Gray
   mailing address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: Correctional Officer
   Employed at: Union Correctional Institution

L. Defendant: J. Crow
   mailing Address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: Correctional Officer
   Employed at: Union Correctional Institution

m. Defendant: Bennett Kilgore
   mailing Address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: Leautenant
   Employed At: Union Correctional Institution

(7A)

(8)

(Continued from Page 7A Parties)

N. Defendant: Wayne H. Priest
   mailing address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: Classification Officer
   Employed at: Union Correctional Institution

O. Defendant: Susan T. Robinson
   mailing address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: Assist. Warden over Programs
   Employed at: Union Correctional Institution

P. Defendant: Milton Hicks
   mailing Address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: Warden
   Employed at: Union Correctional Institution

Q. Defendant: Alicia Forsyth
   mailing Address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: Licensed Practicle Nurse (L.P.N.)
   Employed at: Union Correctional Institution

R. Defendant: Julian Aviles
   mailing Address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: Chief Health Officer (M.D.)
   Employed at: Union Correctional Institution

(7B)

(Continued from Page 7B Parties)

S. Defendant: C. Nguyen
   mailing address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: medical Doctor
   Employed at: Union Correctional Institution

T. Defendant: Cathy Allin
   mailing Address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: Senior Health Services Administrator
   Employed At: Union Correctional Institution

U. Defendant: Charolette Bowlan
   mailing address: 7819 NW 228th Street
                    Raiford, FL 32026
   Position: Senior Health Services Administrator
   Employed at: Florida State Prison

V. Defendant: B. Kirk Padrick
   mailing address: Reception & medical Center PO Box 628
                    Lake Butler, FL 32054
   Position: Audiologist
   Employed at: Reception & medical Center (R.M.C)

W. Defendant: Scott J. Thayer
   mailing Address: Reception & medical Center PO Box 628
                    Lake Butler, FL 32054
   Position: Region II medical executive Director/Physician Advisor
   Employed at: Reception & medical Center

(7C)                                                    (10)

(Continued from Page 7C Parties)

X: Defendant: Celeste Kemp
mailing address: 2601 Blairstone RD.
Tallahassee, FL 32399 - 2500 (Central office)
Position: Secretaries Representative
Employed: FL D.O.C. Bureau of Inmate Grievance Appeals

Y. Defendant: C. Greene
mailing address: 2601 Blairstone RD. (Central office)
Tallahassee, FL 32399 - 2500
Position: Secretaries Representative
Employed at: FL D.O.C. Bureau of Inmate Grievance Appeals

Z. Defendant: Pilar Tourney
mailing address: 2601 Blairstone RD (Central office)
Tallahassee, FL 32399 -2500
Position: IISC Program Specialist
Employed at: FL D.O.C. Bureau of Inmate Grievance Appeals

Z1. Defendant: S. Milliken
mailing address: 2601 Blairstone RD (Central office)
Tallahassee, FL 32399 -2500
Position: Secretaries Representative
Employed AT: FL D.O.C. Bureau of Inmate Grievance Appeals

Z2. Defendant: C. Neel
mailing Address: 2601 Blairstone RD. (Central office)
Tallahassee, FL 32399- 2500
Position: Secretaries Representatives
Employed at: FL D.O.C. Bureau of Inmate Grievance Appeals

(7D)                                                                (11)

(Continued from Page 7B Parties)

23. Defendant: M. Salono
    mailing Address: 2601 Blairstone RD. (Central office)
                     Tallahassee, FL 32399-2500
    Position: responding employee
    Employed at: FL D.O.C. Bureau of Inmate Grievance Appeals

24. Defendant: Walder A. McNeil
    mailing Address: 2601 Blairstone RD (Central office)
                     Tallahassee, FL 32399-2500
    Position: Secretary of Florida Department of Corrections
    Employed at: Florida D.O.C. (Central Office)

(7E)                                                    (12)

VI.   STATEMENT OF CLAIM:  State what rights under the Constitution, laws, or treaties of the United States have been violated, and be specific.  If you intend to allege a number of related claims, set forth each claim in a separate paragraph.  Any claim that is not related to the same basic incident or issue must be addressed in a separate Civil Rights Form.

Plaintiff Supports the following Statements of Claims by reference to the (paragraphs 1-101) of the Statements of facts and the Exhaustion of all Administrative Remedies contained within this Civil Rights Complaint.

(A)[Claim #1] Defendants' Sgt. James Davis, Sgt. michael

VII.   STATEMENT OF FACTS:  State as briefly as possible the FACTS of your case. Describe how each defendant was involved.  **Do not make any legal arguments or cite any cases or statutes.**  State with as much specificity as possible the facts in the following manner:

1.   Name and position of person(s) involved.
2.   Date(s).
3.   Place(s).
4.   Fact(s) or event(s) giving rise to your claim, including involvement of each defendant.
5.   Nature and extent of injury (*i.e.*, physical injury or how you were harmed by the acts of the defendant(s)).

1. Plaintiff was an inmate Patient at Union Correctional Institution in an in-Patient mental health transitional care Unit on V-Dormatory and was housed in cell V-4111 on the first floor in Quad 4.

2. Plaintiff was being treated with Vistaril for anxiety attacks, Respodol for paranoia and hallucinations, Zoloft for depression and problems with nightmares/flashbacks aswell as verapamil for migrane headaches all of which were prescribed by a physician/psychiatrist.

(continued from Page 8 Statements of Claims)

Wiggs, C/o Derek Gibshen, C/o David Weathers, C/o Jared Cranford, C/o Keith Parrish, and LT. Bennett Kilgore's acted with "Sadistic" and "malicious" intent to cause Plaintiff Serious injury threw the Excessive Force on Oct. 21st 2008 which violated Plaintiff's rights, and constituted Cruel and unusual Punishment under the 8th Ammend. of the U.S.C.A.

(B) [Claim#2] Defendant's C/o J. Gray, C/o J. Crow, C/o L. Myers and Sgt. J. Davis's "Acts of Reprisal" against Plaintiff for utilizing his rights to "Exhaust Administrative Remedies" to seek protection against abuse, harassment, and threats of bodily harm aswell as to seek adequate health Care, violated Plaintiff's rights, and constituted Cruel and unusual Punishment under the 8th Ammend. of the U.S.C.A.

(C) [Claim#3] Defendants C. Greene, S. Milliken, M. Solono, C. Neel, and Celeste Kemp all of who are representatives for the Secretary of D.O.C., Walter A. McNeil Secretary of DOC, Milton Hicks Warden at UCI, Susan Robinson Assist Warden at UCI, Pilar Journay IISc, Wayne H. Priest SR Classification officer at UCI, all acted with "deliberate indifference" by knowing about the danger Plaintiff was in threw excessive Grievances but "failed to Protect" Plaintiff resulting in harrassment, further threats of bodily harm, Staff abuse, and continuous acts of reprisal which violated Plaintiff's rights, and constituted Cruel and unusual Punishment under the 8th Ammend. of the U.S.C.A.

(D) [Claim#4] Defendant's LPN Alicia Forsyth, Dr. C. NGUYen M.D. Dr. Julian Aviles C.H.O, Dr. Scott Thayer RMED all acted with

(8A)

(14)

(continued from Page 8A Statement of Claims)

"deliberate indifference" of Plaintiff's health case needs "by knowing" about Plaintiff's "substantial injuries and suffering" but instead of correctly document and treat these injuries from oct. 21st 2008 s Excessive use of Force stood in the way of Plaintiff's treatment by ignoring, overlooking, and trying to "cover-up" these injuries violating Plaintiff's rights to (adequate medical case), which constituted cruel and unusual punishment under the 8th Ammend. of the U.S.C.A.

(E) [Claim #5] Defendant's Susan Robinson assist. Warden over Programs, Cathy Allin SRHSA, Milton Hicks warden, Pilar Tournay IISC, Dr. Scott Thayer RMED, Dr. Frank Johanson assist. Secretary of Health Services, Celeste Kemp Secretary's Rep, Dr. Julian Aviles C.H.O, walter A. Mc Neil Secretary of FL D.O.C, all acted with "deliberate indifference" of Plaintiff's health care treatment needs. These defendant's were "informed by Plaintiff" and knew of" the lack of treatment of Plaintiff's injuries threw several grievances but continued to ignore and overlook Plaintiff's outcries for help violating plaintiff's rights to (Adequate medical care) which constituted cruel and unusual punishment by allowing Plaintiff to suffer from "wanton inflictions of pain, under the 8th Ammend. of the U.S.C.A.

(F) [Claims #6] Defendant's LPN Alicia Forsyth, Dr. C. Nguyen M.D., Dr. Julian Aviles C.H.O, Dr. Frank Johanson assist. Secretary of health Services, Cathy Allin SR. HSA, Charolette Bowlan SR HSA, Dr. B. Kirkpatrick Audiologist, Pilar Tournay IISC, Celeste Kemp Secretary's Represenative, Dr. Scott Thayer RMED/Physician Advisor for Utilization management, and walter A. Mc Neil Secretary of FL D.O.C. all displayed acts of "Deliberate Indifference" by falsifying, removing, destroying, intercepting and/or tampering with medical records "knowing" that

(8B)

(15)

(continued from page 8B statements of claims)

in doing so would only "continue" to delay, deny, and out-right help "cover-up" plaintiffs needed treatment allowing plaintiff to suffer longer violated plaintiffs rights and constituted cruel and unusual punishment under the 8th Ammend. of the U.S.C.A.

(G) [Claim #7] Defendant(s) officer J. Crow and J. Gray acted with "sadistic and malicious" intent to cause plaintiff serious injury threw the "Excessive use of force" on May 3rd 2009 which violated plaintiffs rights, and constituted cruel and unusual punishment under the 8th Ammend. of the U.S.C.A.

(H) [Claim #8] Defendant(s) Charolette Bowlan SR. Health Services Administrator, Cathy Allin SR. Health Services Administrator, Dr. Frank Johanson Assist. Secretary over Health Services, Dr. Scott Thayer Regional medical Executive Director/Physician Advisor for Utilization management and Walter A. McNeil Secretary over Florida Dept. of corrections continue to act with "deliberate indifference" by enforcing a D.O.C. "Policy" that has no "suitable use". If plaintiff was deaf in both ears all the hearing aids in the world won't help one ear. Following this "policy" holds no merit and therefore is just an "excuse" to inadequately medically treat plaintiffs hearing loss (diagnosis), violating plaintiffs rights to adequate medical care constituting cruel and unusual punishment under the 8th Ammend. of the U.S.C.A.

(I) [ The plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has and will continue to be irreparably injured and will continue to

(8C)

(Continued from page 8C Statements of Claims)

be affected and suffer for the remainder of his natural life physically, mentally and emotionally. Plaintiff's hearing loss will limit him from working many jobs, from Participating in several enjoyable activities and will prevent Plaintiff from pessuing his talents in music and songwriting due to the defendants in this case. Plaintiff respectfully asks the court to grant him his requested relief aswell as a decleration that the acts and ommissions described here in violate the Plaintiffs rights guarenteed to him under the Constitution and laws of the United States of America.

(8D)

(17)

Statement of Facts, continued:

(3.) Plaintiff is a Caucasian male approx 137 lbs. 5 foots inches tall and was at Union Correctional Institution (UCI) due to severe depression, self inflicted injurious behavior from anger issues and Plaintiff resided at (UCI) from July 6th 2007 - June 23rd 2009.

(4.) Inmate Patients at (UCI) have had several problems with staff "upon information and belief" and have been exposed to substantial risk and incidents of abuse, corporal punishment, as well as inadequate health care leading to multiple federal lawsuits for constitutional rights violations, reassign- ment of staff, guards being arrested by the F.B.I. in some cases.

(5) most of the psychiatrists, staff, and medical personell are personally related to security or are close enough friends that everyone covers up each others dirt.

(6) Although the warden and secretarys office recieves 100% of grievances of staff abuse, harassment, threats, reprisal ect. it usually takes excessive suffering before anything gets done. (Defendants Deliberate Indifference)

(7) Defendants milton Hicks (warden) Susan Robinson (asst warden), wayne frost (SR classification off. cer) walter A. mcneil (secretary of DOC)

(Continued from page 9. Statements of facts.)

Pilur Tournay(IISC) Celeste Kemp (Secretary's Representative who answers Administrative grievance Appeals, aswell as C. Greene and S. Milliken who also are representatives for defendant Walter McNeil D.o.c secretary and all had Knowlege of the substantial risks of serious harm to inmate Patients at Union correctional. They Knew of the Security problems described above and the resulting injuries and risks to inmate Safety. This risk has been long standing, pervasive, and apparent to any Knowleyable observer.

8. As a result of this risk of serious harm "numerous" inmate mental health patients including Plaintiff in this Case have suffered from assults by the guards while these patients were not only heavily medicated but were also in full restraints, (leg shackles, waist restraints aswell as their wrists either in leather restraints, plastic restraints, or handcuffs, and leg irons.

9. Upon information and belief, dozens and dozens of inmates have filed administrative grievances andlor appeals threwout the entire duration of plaintiffs stay at Union complainting of excessive forces, Sexual assult by guards, acts of reprisal, inadequate medical care of injuries, falsified medical records by nursing staff to cover up these assults, and at least 2 lawsuits have been filed in federal court that Plaintiff personally Knows of due to excessive force and inadequate medical care of injuries Sustained. one by Inmate Tyson watson and one by Phillip Daultry. Phillip because guards broke his arm and Tyson because they sexually assulted him, busted his head open, split his lip ect.

10. Upon information and belief their have be psycological caunslors who have filed excessive incident reports on behalf of their patients, (some) of who were fired afterwards or intimidated by fellow employees to quit for "Snitching" on their fellow staff ~~force~~ three of which have filed on behalf of Plaintiff at sometime or another - Mr. Fred Snider, Dr. Harness and miss S. Thompson.

(9A.)                                                                   (19)

(Continued from Page 9A Statements of Facts)

11. Union correctional Institution Security and Health Services Administrations Departments aswell as Higher Ranking Administrators at Florida D.O.C's Central office acted with deliberate Indifference by hiring, employing, and helping to cover up the "Sadistic and malicious" acts and "barbaric" and negligent mindstates of their security and health care staff at Union correctional Institution, and by engaging in a dangerous and violent policy, un-written rule and/or custom.

13. As a result of this deliberate indifference by (defendants) walter A. McNeil: secretary of D.O.C, C.Greene, S.Milliken, and Celeste Kemp all (3) of who are defendant McNeils responding re representatives, Pilar Tournay IISC Program specialist, at the central office, Cathy Allin SR. Health services administrator at Union correctional, Susan T. Robinson assist. warden over Programs, Dr. Julian Aviles Chief Health officer, milton Hicks warden Plaintiff himself also became "a victim" of this animalistic and inhumane treatment and now suffers "**Permanent disabilities**" and/or "**Untreated**" **Injuries** due to him being "assulted by "several" Guards on Oct. 21st 2008. aswellas other dates as you will read about in this complaint...

(EXCESSIVE USE OF FORCE)

* FOR FACTS 14-45 Please refer to Exhibit A1 * (Also Exh. AA1)

14. On Oct. 21st 2008 while Plaintiff was housed on V.dorm in Quad 4 in Cell V-4111 at Union correctional Institution Plaintiff was deprived by defendant L.P.N. Alicia Forsyth of his dinner time medications during medication rounds.

15. At approx. 1710 hrs. Plaintiff suffered from a "severe anxiety attack" and "paranoia attack" and found himself inside his cell trapped with his cell door locked and large flames of fire inside the cell. Due to Plaintiffs cell being in direct view of the officers control booth and fixed wall surveillance Cameras the fire was noticed by officer Davis (a female officer who worked in the control booth) at approx. 17:15 hrs.

(9B)

(Continued from page 9B statements of facts)

at which time she notified (defendant) Sgt. James Davis via radio.

16. Defendants Sgt. Davis and officer Gregory Stanley were respondants to Plaintiffs cell who bearing a dry fire extinguisher used for electric and chemical fires, and a water extinguisher tried to put the fire out by spraying threw the bottom of the cell door first until they realized Plaintiff had blocked up the bottom of his door.

17. Due to the door being blocked, the cell filled with thick black smoke, and the fire sprinkler inside plaintiff's cell "not working", these two defendants opened the hand cuff port on cell door and sprayed inside and extinguished the large flames

18. at approx 1720 hrs Plaintiff was hand cuffed threw the hand cuff port as plaintiff was found to be sitting on the floor with his back against the cell door "unresponsive"

19. Plaintiff's cell door was rolled open and plaintiff fell backwards onto the floor with his head hitting the floor as he layed their face up "struggling to breath" and covered in yellow powder from the dry fire extinguisher and ashes from the fire (but no identifiable injuries found).

20. Plaintiff was given several lawful commands to stand up and walk to the medical treatment room but do to lack of oxygen plaintiff couldn't, which was taken as a refusal at which time "spontanious force" was utilized by (defendant) Sgt. Davis and (defendant) ofc.er Derek Gilbstein who heard the call of the fire over the radio and responded.

21. While in the presence of officers Clo Robert Hill, Clo Bryan Crost, Clo michael Hinman, LT. mark curtis, (defendant) Sgt. michael wiggs (defendant) Clo Jared Cransord, (defendant) Clo Keith Parrish, (defendant) Clo "David Weathers", (defendant) LT. Bennett Kilgore, and (defendant) L.P.N. Alicia Forsyth, (defendants) Sgt. James Davis and officer Gilbstien grabbed plaintiff "by his wrists" which were hand cuffed in front of plaintiff and these two (defendants) drug plaintiff backwards to the quad four grill gate

(9C.)

(21)

(continued from page 9 & statements of facts)

22. Upon reaching the grill gate (defendant) officer Gibstien released plaintiffs hand at which time (defendant) officer John Carter grabbed plaintiff and assisted (defendant) Sgt. Davis drug plaintiff into the hallway of v-dormatory (at which time upon entering the hallway plaintiff was now "out of view of all video and audio survelliance equipment".

23. Plaintiff was drug around to the front of the control booth, threw another grill gate that had to be buzzed open from the control booth approx. 10 more feet into the medical treatment room, which also contains "zero" survelliance equiptment.

24. Upon entering the room, choking plaintiff, who was still handcuffed, and only weighed approx 137 lbs. was shoved to the floor gasping for air, and spitting up black ash.

25. It was at this time (defendant) Sgt. Davis stated out loud to officer Gibstien who is a (defendant), officer John Carter who is also a (defendant) and several other guards" Boys, lets show this little fuckboy how we treat disobediant mental health patients hear at Union C.I."

26. It was to this statement that (defendants) Sgt. Davis and officer Carter began to "stomp and kick" plaintiff in his shoulders, chest, back, arms and legs, while (defendant) officer Gibstein grabbed plaintiff by his throat and started choking plaintiff and "barbarically" slammed plaintiffs head against the concrete floor several times.

27. Plaintiff who was still suffering from his anxiety and paranoia attack, who was stilled suffering from excessive smoke inhalation, who was in need of emergency medical treatment, was instead being brutalized inside the medical treatment room "crying" and still struggling to breeth easily and their fore kept nodding in an out of conciousness.

28. Defendant Gibstien then stood up on his left knee and used his right knee to pin the right side of plaintiffs face to the concreet floor then with both fists "repeatedly and sadistically" began punching

(9D.)                                                                    (22)

(continued from page 9D statements of facts)

Plaintiff in the face, head and left ear.

29. The last thing Plaintiff remembers hearing ~~was~~ threw his left ear was (defendant) LT. Bennett Kilgore state "Boy's (we) only have about another minute before (we) have to turn the "Use of Force Camera" on so(let's) make it count". (Please note that the use of force camera is a hand held video camera being held by (defendant) Officer David Weather)

30. It was to this "order" by (defendant) LT. Kilgore that Plaintiff felt "numerous heavy boots" kicking him all over his face, body and head before being hit with a metal office chair in Plaintiffs back and (defendant) Sgt. Michael Wiggs began jumping up and down on Plaintiffs right knee which had recently healed from a "Staph infection of MRSA" that had previously hospitalized Plaintiff, due to inadequate medical care and ate completely threw the nerves in Plaintiffs knee.

31. Finally "like the eye of a hurricane" everything was quiet and "several" security guards exited the treatment room leaving plaintiff balled up on the floor bleeding from his head, left ear, face and head swollen and severally bruised and "excruciating" pains all over Plaintiffs body. Plaintiffs Jaw was dislocated, the bone in his left elbow was poking threw the skin, ect.

32. The only people who remained in the room were (defendants) L.P.N. Alicia Forsyth, officer Keith Parrish and officer Jared Cransford, and officer David Weathers who was standing in the doorway with the "use of force" camera "still turned off" in his hand.

33. Plaintiff was then lifted up off the floor and was slammed onto a black medical examination table inside the treatment room in a sitting position as Plaintiff began choking up ashes and debree from the fire, and was still having difficulty breething but managed to stay "partially conscious" threw the assult.

(Continued from Page 9E Statements of facts)

## (Inadequate Medical Care)

34. Defendant L.P.N. Forsyth hurried up and shoved an oxygen tube into Plaintiffs nose. and turned on a "Green Portable Oxygen tank" and "Pretended" to be taking Plaintiffs Vital signs at which time she instructed (defendant) Officer David Weathers "Now you can turn the use of force Camera on, the LT. will be back in a minute to make his opening Statement."

35. It was to this statement that (defendant) officer weathers who already had the Camera in his posession "finanally" Turned the camera on at (17:30hrs) even though he initially witnessed the spontaneous use of force begin 10 minutes prior at (17:20hrs), there fore leaving [10 minutes unaccounted for] that Plaintiff was in a "blind spot" out of view of survelliance cameras and out of earshot of all audio equiptment.

36. Although Plaintiff sustained "several injuries" to include: blood leaking out of Plaintiffs (L) ear, an abrasion on Plaintiffs (R) ear, a dislocated Jaw, a laceration to the frontal left quadrant of Plaintiffs head, red strangle marks on Plaintiffs neck, the bone of plaintiffs left elbow poking threw the skins surface, severe swelling and bumps on Plaintiffs head and face, dark redish/Purplish welts and bruises of boot prints on Plaintiffs face, head, and all over plaintiffs upper chest area, arms, legs, and lower back area, and Plaintiff mumbled as loud as he could threw his shortness of breath and insured Jaw that he (Plaintiff) was having "difficulity hearing"... The only injury (defendant) LPN Alicia Forsyth documented in the post use of force medical paper work (on the diagram of injuries form) "a small abrasion to Plaintiffs (R) ear" which she syned her name and dated (17:25hrs. 10/31/08) (see Exhibit 99) & (A1)

37. (Defendant) LPN Forsyth then got on the phone in the treatment room (in presence of Plaintiff) who was still receiving oxygen. (defendant) Forsyth called the on-call doctor (Travino) and [lied] by telling

(24)

(continued from page 9F statements of facts)

Dr. Travino that (Plaintiffs) recieved a letter saying his mom died and he set his cell on fire trying to kill himself and requested approval to have Plaintiff placed in 4 point leather restraints, which upon information and belief was to use restraints not to protect Plaint. ff from harming himself or others, but that (defendant) Forsyth wanted to use these restraints as punishment.

38. Defendant Forsyth also requested permission to give Plaintiff an ETO tranquilizer shot, due to the [lie] told by (defendant) Forsyth Dr. Travino approved both requests.

39. (Defendant) LPN Forsyth rammed the whole length of a needle into plaintiffs left upper but. cheek instead of just using the tip of the needle causing plaintiff to suffer more pain from the nerves in his side/hip area.

40. Plaintiff was then stripped completely naked down to his boxers to which revealed dark boot prints all over plaintiffs lower back, shoulders and chest aswell as fist marks, but these markings were never documented by (defendant) Forsyth.

41. Plaintiff was then given a "dresslike" velcrow safety shroud, was shackled at his feet with leg chains on his bare ankles which are now permanently scarred from the metal digging into his skin

42. Plaintiff was then placed in full metal restraints to include being re-handcuffed behind his back with the handcuffs secured in a black box attached to a waist chain, at which time Plaintiff was escorted on foot across Union Correctional Institutions compound barefooted from V-dorm all the way to S-Dorm, with (defendants) officer Keith Parrish, officer Jared Cranford, LT. Kilgore, followed by officer David Weathers who still had the use of force camera pointed at Plaintiff.

43. Upon entering S-Dorm Plaintiff was placed in cell S-2104, was removed from the metal restraints and blackbox, was layed on a metal bunk ontop of a mattress with no linen on it and plaintiff was placed

(continued from page 96 Statements of facts)

on his back, legs spred apart with each ankle secured seperately with leather straps, Plaintiss head was placed in a helmet, his right wrist secured to the bed facing away from the bed and his left wrist was secured above his head leaving Plaintiss 4-pointed in superman position which is known to cause insury and is known to be very painsull. At no time was Plaintiss showered, nor was he ever treated by medical for any of his injuries not even the documented insury of abrasion " allegedly to plaintiss (R) ear. The cell door was secured and the use of force Camera was turned oss. (All this can be referred to Exhibit A 1) (Also See Exh. BB1)

44. Plaintiss was left this way for what seemed like forever with his whole body, jaw, elbow, and face in excruciating pain.

45. Finally LPN Barbara Baker ordered Sgt. Knipp of the 4-12 S-Dorm to remove the restraints.

46. Upon removal plaintiss who was still in tears mumbled as loud as he could to LPN Baker that he needs medical treatment and that he is in severe pain all over but also that he "cannot hear" threw his (left ear)

47. LPN Baker told Plaintiss that because (desendant) LPN Forsyth "did not" document "all" his injuries from the "use of sorce" while he was still on V-dorm, that is she LPN Baker was to document them now that Plaintiss was on S-Dorm it would look like S-Dorm stass caused the injuries so to avoid that "nurse Baker refused to document and treat plaintiss injuries

48. After 5 days of trying to be examined and treated by medical Plaintiss submitted a medical sickcall request slip to the office of health services threw nurse Henderson who upon collecting it signed it and dated it and gave Plaintiss a copy before she turned it in (Oct. 26th 2008). This sickcall mainly

(continued from page 9H statements of facts)

Seeking/complaining of hearing loss and injuries from Oct. 21, 2008 at 17°25hrs. (See Exhibit B1)

49. On Oct. 30th 2008 Plaintiff was examined by (defendant) Dr. C. Nguyen M.D. due to Plaintiffs sickcall slip.

50. (Defendant) Dr. Nguyen told Plaintiff that just in case he was planning on filing formal charges or a lawsuit against the officers involved that he (defendant) Nguyen (will not) be documenting or treating Plaintiffs injuries, so he (defendant) Nguyen will not be held responsible for helping make Plaintiffs case stronger against his fellow employees. Plaintiff was dismissed and escorted back to his cell S-2104 "untreated"

51. Plaintiff continuously suffering from anxiety, physical pain, paranoia, mental stress and hearing loss submitted more sick call slips to the office of health services on all of these dates: Nov 5th 2008, Nov. 10th 2008, Nov. 11th 2008, Nov. 12th 2008, Nov. 18th 2008, Nov. 23rd 2008, Dec. 12th 2008, Dec. 25th 2008 and (2) on Dec. 28th 2008 all of which were signed, dated and collected by Union correctional nursing staff, but instead of being filed or recorded at the office of health services so plaintiff could be treated and his injuries documented - All these sickcall slips turned up missing instead. (refer to Exhibits inside Exhibit B1)

52. Plaintiff also filed several administrative grievances against medical for inadequate medical care, gross neglect, and deliberate indifference. Plaintiff also wrote letters to the Dept. of health, a complaint to U.S. Department of Justice, and the health Director over Florida Department of Corrections, aswell as contacted (defendants) Cathy Allin Sr. Health Services Admin, Dr. Julian Aviles Chief health officer, Region II medical Executive Director over FLDOC Dr. Scott Thayer seeking treatment for his

(9I)                                                              (27)

(Continued from page 9I Statements of facts)

injuries from Oct. 21st 2008's Excessive Force, all attempts to no avail.

**53.** Finally in Jan 2009 after being being "deprived" medical treatment (defendant) Dr. Scott Thayer - RMED/ Physician Advisor for Utilization management wrote a referral for plaintiff to be examined by a licensed Audiologist named Dr. B. Kirkpatrick at Lake Butler Florida's Reception & medical Center (R.M.C.) do to plaintiffs "Consistant complaints"

**54.** On march 12th 2009 Plaintiff was discharged from T.C.U. and was escorted from S-Dorm to ⓝ N-Dorm for outpatient treatment (mental health). Please note that (defendant) James Davis who was involved in Oct. 21st 2008's Excessive Force on V-dorm was reassigned to work N-Dorm as the 4-12 shift housing sergeant 5-days a week, which Placed Plaintiff back in danger.

**55.** On march 17th 2009 (almost 5 months after Plaintiff Sustained his injuries and was "forced" to suffer from "wanton" inflictions of pain, Plaintiff was finally examined by an Audiologist due to (defendant) Thayers January 2009 referral.

**56.** Plaintiff underwent a large series of testing "of both his ears" by being hooked up to not just one, not two, but (3) different testing devices, until it was determined by (defendant) Dr. B. Kirk Patrick (Audiologist)'s "diagnosis" that due to Oct. 21st 2008's head trauma Plaintiff now suffers total hearing loss threw his (left ear) (and) also Partial damage to his right ear also.

**57.** (Defendant) Dr. Kirk Patrick wrote his "diagnosis" in Plaintiffs medical chart [ along with a written recommendation to defendant Thayer that Plaintiff be furnished a hearing aid

(9J)                                                         (28)

(Continued from Page 9J statements of facts)

for his (R) ear to "help Prevent further damage to the eardrum due to all the strain it will be under.

58. Defendant Kirk Padrick told Plaintiff "Yur left ear (is) completely shot and it [cannot] be saved. You are also Partially deaf in yur right ear aswell. I am gonna write ya a recommendation to recieve a hearing aid for yur(R) ear to stop that ear from constant strain due to yur left ear being completely shot. If D.O.C. denies my recommendation "I highly" recommend that if ya get out soon, then yu get one when yu get out, because if yu don't the strain to yur right eardrum "will cause" further damage and "its very possible yu could lose hearing in yur right ear also"

59. Upon arriving back at Union correctional from (R.M.C.) and Plaintiff was re-housed in his cell N-2219 Plaintiff began filing Excessive Grievances and appeals against security about the Excessive Force on Oct. 21st 2008 aswell as against the office of health services.   (Reprisal/Retaliation began)

60. On April 16th 2009 at approx 3:30pm Plaintiff was interviewed by his out-patient psyc specialist miss Thompson to discuss his built up "anxiety and mental torture" surrounding Plaintiffs diagnosed hearing disability aswell as the stress, nightmares and flashbacks he was suffering from everytime he thought about (defendant) Davis and the assult on V-dorm.

61. During this interview 4:00pm shift change officers entered the building (N-Dorm) and stood outside the room Plaintiff and miss Thompson were in, listening.

62. These officers consisted of (defendants) Sgt. James Davis, officer J. crow, officer Jones, and officer Leonard myess.

63. Later that evening Plaintiff was handcuffed behind his back

(9K)                                                   (29)

(Continued from Page 9K Statements of Facts)

by Officer Jones and was escorted to the barber for a shave.
64. While Plaintiff was being shaved (defendant Leonard Myers) stood to Plaintiffs right side and started yelling at Plaintiff to face the wall which Plaintiff was already doing.
65. (defendant) Officer Myers then spit into the right side of Plaintiffs face and told Plaintiff that he (defendant Myers) should "break Plaintiffs jaw", "for snitching to miss Thompson about the assult caused by his (defendant Myers) Sgt. (Sgt. Davis)
66. Plaintiff (half shaved) was sent back to his cell without the ability to shower
67. As Plaintiff turned around to walk to his cell Plaintiff noticed that (Defendant) Sgt. James Davis stood approx 20 feet away laughing.
68. The following afternoon (April 17th 2009) during dinner (defendant) Officer Myers stopped at Plaintiff(s) cell N. 2219 and told Plaintiff the only way he could recieve his dinner tray was if Plaintiff 1st showed (defendant Myers) his hands to which Plaintiff complied, next he asked to see the bottoms of Plaintiffs feet, to which Plaintiff turned to face the back of his cell and lifted each foot to show (defendant Myers) his feet, then Plaintiff was told to "bust his pussy open and agree to be (defendant) Myers bitch" or Plaintiff won't eat
69. Plaintiff told (defendant) Officer Myers "enough is enough You are abusing your authority and singling me out on top of that, Keep yar fucking tray.
70. Defendant Myers opened Plaintiffs door flap and shoved an "empty tray" onto Plaintiffs floor an said "I can't let my baby starve here you go baby." Door flap was secured and (defendant) Officer Myers walked away laughing

(Continued from Page 9, Statement of facts)

71. Plaintiff wrote grievance log # 0904-213-267 to [defendant] warden milton Hicks for "Acts of Reprisal" (See exhibit C1)

72. On April 21st 2009 Plaintiff wrote mental health complaining about "Acts of Reprisal" seeking a transfer for "his safety" do to "Constant fear" for his safety and life, aswell as his health. This informal grievance was refered to [defendant] Wayne H. Priest "Plaintiffs classification officer"

73. On April 24th th 2009 [defendant] Priest approved this grievance by stating "a report has been filed and forwarded to the appropriate authority for review and investigation (see exhibit D1)

74. On April 29th 2009 Plaintiff recieved [defendant] warden Hicks response to Formal Grievance #0904-213-267 for "Acts of Reprisal" approved to be investigated though "still no protection was given" (See exhibit C1)

75. On this same date Plaintiff wrote an "emergency Grievance" to [defendant] warden Hicks "Seeking Protective Custody do to all the "Continuous" Acts of Reprisal" grievance log #0905-213-030 submitted may 1st 2009 please (See exhibit E1)

76. On may 3rd 2009 at approx 6:44pm "again Plaintiff was abused by Security by way of "Excessive Force" because of [Defendant] Sgt. James Davis and for Plaintiff excessively complaining about Oct. 21st 2008's Excessive Force and his "untreated" injuries,

77. [Defendants] officers J. Crow and J. Gray both of who are assigned to work under the authority of [Defendant] Sgt. James Davis on N-Dorms 4-12 shift assulted Plaintiff by slamming the steel handcuff port slap on Plaintiffs right hand immediately after removing a pair of handcuffs.

78. While Plaintiff stood their screaming that (2) of his fingers were stuck in the flap officers gray and crow using all their body weight leaned against the outside of the slap continuing to crush Plaintiffs fingers while laughing at "crying" Plaintiff as Plaintiff continued to cry out for help. [Defendant] crow stated "Sgt. Davis told us to tell you

(continued from page 9m statements of facts)

he says hello." [Defendant] officer Gray then stated "lets see you write Grievances and letters now with a broken hand mother fucker" at which time plaintiffs fingers were released, door flap was secured and locked, an though plaintiffs fingers were swollen and bloody "again" Plaintiff was deprived medical care.

79. At no time on that shift was their any "use of force" paperwork written nor documented [though the incident was caught on camera (N-Dorm wing 2, 2nd Floor fixed wall cameras seen the whole incident)

80. It wasn't until the next day at approx 9:00-9:30 a.m. that plaintiff seen a Lt. Shawn Swain who documented the staff abuse and had plaintiffs hand examined by nurse S. Bickles, who had put plaintiffs first 2 fingers of his right hand in a splint and gave plaintiff some single dose packets of Ibuprofin for the pain and documented staff abuse, ordered for x-rays before sending plaintiff back to his cell N-221q

81. At no time was Plaintiff placed in protective custody, moved, or transferred for his safety.

82. On may 4th 2009 Plaintiff filed "emergency Grievance to warden and/or classification about staff abuse again seeking protection from further reprisal grievance log # 0905-213-135 Please (see exhibit F1)

83. May 5th 2009 Plaintiff's right hand was examined by [defendant] Dr. Julian Aviles C.H.O. who rather then remove nurse Bickles splint to examine plaintiffs injury he just wrote an order for Plaintiff to recieve (60) 600mgs. of Ibuprofin then sent plaintiff back to his cell.

84. On may 7th 2009 at approx 4:00pm Plaintiff was interviewed by the inspector Generals office about may 3rd 2009's staff abuse (and) the incidents that occued on April 16th & 17th 2009 with [defendant] officer myers. Though Plaintiff requested protection (none was given)

(Continued from Page 9A) Statements of facts)

85. On May 8th 2009 Plaintiff again was interviewed by someone else from the inspectors office and Plaintiff was told D.O.C. is conducting an investigation but you need to try and be patient to which Plaintiff told the inspector "look fuck being patient I've been assulted not 1 time but twice in less then a yr. but are both related to each other, I've had officers spit in my face, sexually harass me, threaten me, play with my mail, intercept my outgoing legal mail, deny me medical care and won't stop. "I'm petrified", I've requested protection before, during, and after an all ya want to tell me is try to be patient"... when I die will that be patient enough? I've had my fingers smashed I'm deaf, my head busted open, kicked damn near to sleep, jaw dislocated, scars, cuts, bruises, permanent injuries an all yw got to say is "we're still investigating everything"? "try to be patient" how much more must me and my fellow inmates face before yw get yur heads out yur asses and (enforce our rights), (protect us) (make sure we are (medically treated)... to this the inspector stood up told plaintiff the interview is over and to just "try and hang in their"

86. As plaintiff stood up he stated "look, I appologize for snapping but I'm tired of being scared to go to sleep, scared to wake up, I'm tired of being in physical pain, having nightmares, flashbacks of abuse, suffering excessive anxiety attacks, being deaf, being abused, being harrassed, tormented and humiliated all I'm asking is for is protection during the investigation and treatment of my injuries..." But again Plaintiff was told "Just try an hang in their".

87. On May 14th 2009 at approx. 8:26pm [Defendant] Sgt. James Davis approached Plaintiffs cell and harassed him for writing grievances against him, officers Gray, Crows, myess and those involved in the oct. 21st 2008 attack. On may 15th 2009 Plaintiff filed "Emergency Grievance of Reprisal for further threats of bodily harm #0905-213-228 to warden (See exhibit 61)

(9B)

(33)

(Continued from page ⑨ Statements of facts)

88. On May 15th 2009 at approx. 9:05pm when Plaintiff went out to shower [defendants] Sgt. James Davis and Officer J. Gray went inside Plaintiffs cell (N-2219) and removed all Plaintiffs blankets, sheets, pillow and mattress and made Plaintiff sleep on a bare cold, concrete slab to punish Plaintiff for speaking to the inspector on May 7th & 8th 2009.

89. Before walking away from Plaintiffs cell [defendant] Davis stated "write that up, tell the inspectors or that senile old man Hicks or that nigger warden Robinson how me and big show (aka Glo Gray) got you sleeping on concrete". Plaintiff was forced to sleep and lay on bare concrete for 4 days (please see Grievances 0905-213-229 and 0905-213-225 (a.h.a) (Exhibits H1 & I1) again Plaintiff sought protection

90. May 20th 2009 Plaintiff recieved [defendant Hicks] response to grievance # 0905-213-135 about May 3rd's staff abuse seeking protection but) [defendant warden milton Hicks] "Denied" this grievance please (see exhibit F1)

91. Plaintiff appealed to the secretery over FLDOC [defendant] walter A. McNeil log# 09-6-18007 which was also "denied" (see exhibit F1)

92. On May 31st 2009 while Plaintiff was still housed at Union C.I. in cell N-2219 nurse Bickles told Plaintiff that the Audiologists recommendation for Plaintiffs hearing aid has been "denied" by [defendant] Dr. Scott Thayer Regional medical exec. Director / Physician Advisor for Utilization management which is the same doctor who submitted the referral for plaintiff to be examined by the audiologist to begin with

93. On June 23rd 2009 Plaintiff was "transferred" to Florida State Prison which is approx. a 10 minute drive from Union Correctional Institution without Plaintiff ever being treated for any of the temporary injuries nor the permanent disabilities of hearing loss caused by Union correctional Institution Staff

(9p)                                                    (34)

(Continued from Page 9P Statements of facts)

94. Upon arrival to Florida State Prison (FSP) on June 25th 09 Plaintiff contacted [Defendant] Charlette Bowlan SR.HSA asking for her to help him get treated for his hearing loss (disabilities) to which Plaintiff was told he must be deaf in both ears to recieve one hearing aid

95. On July 6th 2009 Plaintiff wrote a grievance for medical deliberate indifference log # 0907-205-116 for "falsification of medical records and inconsistant medical documentation / tampering with medical records (See exhibit B1)

96. In this grievance Plaintiff spoke of Oct 21st 2008's excessive force and how [Defendant] LPN Alicia Forsyths Post use of force medical examination records are not only insufficent but also inconsistant with the securities use of force reports of Plaintiffs injuries sustained that she told them Plaintiff suffered. She told authorities Plaintiff suffered an injury to Plaintiffs (L) ear which they documented but in her own reports and on the Plaintiffs diagram of injuries she documented it was his (R) ear that was injured which was also signed off on (3) days later by [Defendant] Dr. Julian Aviles C.H.O. as being true (yet) this doctor (at no time) conducted his own exam of Plaintiff.

97. Plaintiff also raised the issue about all the sick call slips he turned in to the Florida Dept. of Corrections Office of health services between Oct. 21th 2008 - December 26th 2008 pertaining to the needing of treatment of the injuries sustained, to which all "mysteriously" "turned up missing from Plaintiffs medical files stopping Plaintiff from being treated in time to possibly avoid permanent disfunction scars, and inadequate healing' aswell as other arguments and issues that have developed due to inconsistant documents, falsification of documents, tampering with records, denial, delay, and complete ignorance of plaintiffs injuries all of which constitute as deliberate indifference due to staff knowing of the problem but failing to act

(9Q)

(Continued from page 9Q Statements of facts)

and correct the problem therefore standing in the way of plaintiffs right to adequate medical care.

98. This grievance was "denied" at the institutional level stating that plaintiffs allegations are "Unsubstantiated" so plaintiff appealed to [Defendant] walter A. mc Neil Secretary of FLDOC please note (see exhibit 09-6-23279 a.k.a. Exhibit B1)

99. On July 12th 2009 after recieving the Use of Force file for Oct. 21st 2008 and plaintiff was able to get all the names of (all) the staff involved the exact times e.t.c. Plaintiff filed an Ammended Formal Grievance of a (Sensitive nature) "Excessive Force/staff Abuse log # 0907-205-218 which was (denied) at the institutional record due to this issue "already currently being investigated by the office of inspector general" (see exhibit A1)

100. On July 20th 2009 plaintiff appealed above grievance to [Defendant] walter A. mc Neil Secretary over FLDOC stating that the warden at the institutional level neglected to grant plaintiff an answer to his requested remedy for compensation for his "permanent injury of hearing loss" that resulted from the same guards (who are being paid to protect him) see appeal # 09-6-23195 a.k.a (exhibit A1)

101. Both of these appeals # 09-6-23279 and 09-6-23195 a.k.a. Exhibits A1 & B1 were both "denied" by the office of Grievance appeals.

102. As a result of (all the incidents) explained in these statements of facts #'s (1-101) as well as the "direct participation" of the following [defendant(s)] sgt. J. Davis, Sgt. M. Wiggs, LT. B. Kilgore, Clo J. Cranford, Clo K. Parrish, Clo D. weathers, Clo J. Carter, Clo L. myers, Clo J. Crow, Clo J. Gray, Clo D. Gibstein, LPN A. Foss Th, Dr. c. Nguyen, Dr. J. Aviles, Dr. S. Thayer, Dr. B. kirkpadrick, Dr. F. Johanson, Cathy Allin, charolette Bowlan, Pilar Tourray, C. Neel, S. Milliken, C. Greene, Celeste Kemp, M. Sulono

(9R)                                          (36)

(continued from Page 9B Statements of Facts)

Sit. Robinson, milton Hicks, and their roles in this case either by directly participating in the assults/acts of reprisal or by personally over looking Plaintiffs "numerous" out cries for help, medical care and protection and/or their personal participation in trying to sweep all the "animalistic, sadistic, barbaric, and malicious" actions behaviors, and thoughts of their fellow staff and employees, under the carpet their fore allowing these continuous acts of cruelty of mankind to occure. Plaintiff is now permanantly injured for life, physically, psycologically, and emotionally and still has not been treated, and will only be able to be treated at "his own expense", upon his release from prison.

103. Due to these defendants cruel and unusual punishment and their acts of deliberate indifference, Plaintiff suffers from lifelong injuries of hearing loss, serious and excessive anxiety to which he has to be medicated for, flashbacks and nightmares, he is being medicated for, a fear of medical staff, scarring in the area of his (L) elbow, scarring on both ankles, continuous periodic "excruciating pains" in his jaw from improper healing, aswell as in his first 2 fingers of his right hand, emmense psycological and emotional trauma, stress, fear, humiliation, and suffering, aswell as temporary injuries of welts, cuts, bumps, bruises, and sever swelling all of which were forced to heal on their own (without) the application of ice or pain medicine.

(On-Going substantial Risk)

104. Despite the incidents described Plaintiffs sufety and health care treatment needs have yet to improve. Though Plaintiff is no longer housed at Union Correctional Institution Plaintiff is still forced to suffer under the "care, custody, and control" of [defendants] Dr. Scott Thayer, Dr. Frank Johnson, Charlette Bolton, and Walter A. Mcneil and Plaintiffs grievance appeals are still being denied by Pilar Tournay, Celeste Kemp, C. Greene, S. milliken, C. Neel, and m. Solano without proper investigation and its because of these above listed defendants Plaintiff still "not treated" for hearing loss

(9S)

(continued from page 95 Statements of Facts)

105. Because of Plaintiffs "injury of untreated hearing loss" and due to the excess strain on plaintiffs right eardrum due to his left ear now being completely shot all that strain is only leading to further injury to the right eardrum

106. Plaintiff is housed at a maximum security prison and can "barely understand" what's going on around him. Plaintiff has missed the opportunity to shower, shave, attend recreation, attend group therapy, attend one-on-one counseling sessions, missed meals missed medication, missed psyc callouts, missed dental callouts ect. ect. ect. all because he couldn't hear the announcements. Plaintiff has been "gassed" for disobeying verbal orders because he could not understand what the guards were saying yet "still" Plaintiff is being "denied" treatment.

107. Plaintiff is scheduled to be released from Prison on 5/08/2010 into society and theirfore is now being told he must wait to get out to yet treated for an injury sustained and diagnosed by staff employees of Florida Doc

108. Theirfore would like for the defendants to provide compensation for Plaintiffs continuous past, present, and future suffering, medical expenses, limited Jobs and activities, pain and suffering, mental é emotional suffering, fear of further reprisal, excessive anxiety, flashbacks, nightmares, Post Tramatic stress, and everything in between

VIII.   <u>RELIEF REQUESTED</u>:   State briefly what you want the Court to do for you.  Again, do not make any legal arguments or cite any cases or statutes.

1) Compensatory Damages in the sum of $240,000 from each defendant. 2) Punitive Damages in the sum of $600,000 from each defendant. 3) That all defendants are sued in their individual and capacities of the official nature 4) A trial by Jury 5) All Plaintiffs costs in this Suit Paid for by FLDOC 6) Any and all other relief deemed fit and nessesary by this court and/or Jury assigned to this case (Thank You)

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Signed this __15__ day of __December__, 2 __009__.

_____

_____

_____

_____

(Signatures of all Plaintiffs)

# EXHIBITS

# FILED  SEPARATELY

# NOT SCANNED